In the Matter of Peter A. D'ANGONA, Debtor.

Peter A. D'ANGONA, Plaintiff,

v.

MARINE MIDLAND BANK; Malden Trust Company; Dr. David M. Bass; St. Mary's Windsor Locks Parish Federal Credit Union; Gulf Oil Company; Anthony Troiano; Anthony Troiano, Jr., d/b/a Anthony Troiano & Sons, Inc.; and Carte Blanche, Defendants.

Bankruptcy No. 2–87–00330.
Adv. No. 2–88–0079.

United States Bankruptcy Court,
D. Connecticut.

Nov. 8, 1989.

Joel M. Grafstein, Bahrenburg and Grafstein, Avon, Conn., for debtor-plaintiff.

Alan J. Barth, Di Pietro, Kantrovitz & Brownstein P.C., New .Haven, Conn., for Malden Trust Co., defendant.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### ISSUE

Peter A. D'Angona, a chapter 7 debtor, seeks a judgment in this core proceeding that he may use Bankruptcy Code §§ 506(a) and (d) for the purpose of avoiding liens on realty abandoned by the estate to him. The issue of such debtor's use of § 506 has been frequently addressed with conflicting results elsewhere, but no written ruling has been rendered in this district. For reasons that follow, I concur with those courts which conclude that the § 506 provisions may not be so used.

### II.

### BACKGROUND

The debtor filed a chapter 7 petition on October 22, 1986 in the bankruptcy court in Providence, Rhode Island. On the motion of a creditor, and over the debtor's objection, the case was transferred to the bankruptcy court at Hartford, Connecticut. 74 B.R. 577. The debtor's petition scheduled as his only significant asset a one-half interest in realty located at 536 Denslow Street, Windsor Locks, Connecticut (the realty). The realty, with a stated value of $68,000.00, was shown as encumbered by fifteen consensual and judicial liens which, on the date of the petition, in the aggregate totaled $241,819.52. The court granted the debtor a discharge and closed the case as a no-asset estate on May 14, 1987, without the realty having been administered. The realty thereby was abandoned to the debt-

or. *See* Code § 554(c).[1]

On the debtor's motion, the court, on April 28, 1988, reopened the case. The debtor then brought the present complaint against seven creditors holding liens on the realty subsequent in time to a judgment lien of Hall & Muska, Inc. The complaint alleges that, with the exception of the lien held by the defendant Marine Midland Bank, the six other defendants cannot hold allowed secured claims because no equity remained for them in the realty after subtracting from the value of the realty the amounts due under the prior liens. As for the Marine Midland debt, the complaint asserts that only $794.57 is secured, with $13,545.06 representing an unsecured claim. The debtor, in paragraphs 3 and 4 of the complaint's prayer for relief, seeks an order of the court that under § 506(d) the Marine Midland lien is avoided for any amount in excess of $794.57, and that the other six named defendants' liens "are avoided as being unsecured." Malden Trust Company is the only defendant who filed a responsive pleading, and the debtor has secured the entry of default against the remaining defendants for failure to plead or otherwise defend. He now seeks a judgment against the defaulted defendants, and the question is whether, as a matter of law, he is so entitled. *See In re Reardon*, 10 B.R. 697, 699 (Bankr.D.Conn. 1981) (Even after default, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action.).

### III.

### DISCUSSION

Section 506 of the Bankruptcy Code provides in part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claims were disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. §§ 506(a), (d) (1988).

The courts currently are divided evenly on whether §§ 506(a) and (d), when taken together, permit chapter 7 debtors to avoid liens on property abandoned to or exempted by them to the extent there is no supporting value in the property. The seminal case which allows such use of § 506 is *Tanner v. FinanceAmerica Consumer Discount Co. (In re Tanner)*, 14 B.R. 933 (Bankr.W.D.Pa.1981). The *Tanner* court concluded that to give a chapter 7 debtor the full benefit of the fresh-start policy underlying the Bankruptcy Code, it was appropriate to rely on the "plain language" of § 506(d) and to allow a debtor to utilize the section to avoid a third mortgage lien on her home when the two prior mortgages had exhausted the alleged market value of the house. Many courts have agreed. *See In re Folendore*, 862 F.2d 1537, 1539 (11th Cir.1989) ("The plain language of the statute, supported by the decisions of a majority of the bankruptcy courts, inferences drawn from the 1984 amendments, and common sense, requires the ... lien be

---

1. Section 554(c) provides:

"Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." 11 U.S.C. § 554(c) (1988).

voidable whether or not [the lienor's] claim has been disallowed under section 502."), and cases cited.

Other courts, following the lead of *In re Mahaner,* 34 B.R. 308 (Bankr.W.D.N.Y. 1983), have denied a chapter 7 debtor's use of § 506(d) to avoid a lien on non-estate property as being contrary to the thrust of the Code when all Code provisions are fully considered. *See In re Doty,* 104 B.R. 133 (Bankr.S.D.Iowa 1989); *In re Dewsnup,* 87 B.R. 676 (Bankr.D.Utah 1988); *In re Maitland,* 61 B.R. 130 (Bankr.E.D.Va.1986); *In re Larson,* 99 B.R. 1 (Bankr.D.Alaska 1989); *In re Shrum,* 98 B.R. 995 (Bankr.W. D.Okla.1989); *In re Gaglia,* 97 B.R. 250 (W.D.Pa.1989); *In re Hoyt,* 93 B.R. 540 (Bankr.S.D.Iowa 1988); *In re Cordes,* 37 B.R. 582 (Bankr.C.D.Cal.1984); *In re Smith,* 79 B.R. 650 (Bankr.D.Md.1987); and *In re Sloan,* 56 B.R. 726 (Bankr.D. Colo.1986).

I find the reasoning of these decisions more persuasive. *Dewsnup* represents one of the more fully-developed opinions. *Dewsnup* initially points out that Congress provided chapter 7 debtors with Code § 722 which permits debtors to "redeem tangible personal property intended primarily for personal, family, or household use" from liens "by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien." *See* 11 U.S.C. § 722 (1988). Realty is not included in § 722. Therefore, to construe § 506(d) to permit debtors to overwhelm the narrow scope of § 722 and allow comparable lien avoidance on realty renders § 722 superfluous. *Dewsnup,* 87 B.R. at 679–80. Furthermore, to permit lien avoidance under § 506(d) grants chapter 7 debtors an advantage not available to chapter 11 debtors.[2] Congress included § 1111(b)(2) in chapter 11 to allow a partially secured creditor to elect to have his lien secure his entire debt and to forego any unsecured claims. *See In re DRW Property Co. 82,* 57 B.R. 987 (Bankr.N.D.Tex. 1986); 5 King, *Collier on Bankruptcy* par. 1111.02 (15th ed. 1989) ("Section 1111(b)

represents an attempt by Congress to create a balance between the debtor's need for protection and a creditor's right to receive equitable treatment.... [S]ection 1111(b) protects the legitimate expectation of the secured lender that the bankruptcy laws will be used only as a shield to protect debtors and not as a sword to enrich debtors at the expense of secured creditors."). There is no apparent reason why Congress would not have granted like protection to chapter 7 secured creditors if it believed that § 506(d) would be used as sought here. It is evident from a reading of § 506(a) that determinations of "allowed secured claims" under that section are limited to "property in which the estate has an interest," thereby excluding property released to the debtor as exempt or abandoned. *Dewsnup,* 87 B.R. at 682. *Dewsnup* carefully analyzes the role of § 506 under the scheme of the Code to facilitate distribution of assets and participation of creditors in the bankruptcy process, concluding:

It is inconceivable to this court that Congress could have intended to create an avoiding power in a Chapter 7 debtor, respecting property which is not to be administered through the bankruptcy process, and which is based on a dichotomy created to facilitate the administration and distribution of the bankruptcy estate.

Since the rights in property which is abandoned remain the same as if no bankruptcy had been filed, it would be illogical to allow the debtors by virtue of § 506(d) to avoid a lien which they could not avoid out of bankruptcy.

*Id.* at 683 (citations omitted).

*Larson, supra,* further deflects the fresh-start argument of *Tanner* by noting that the legislative history of the Code emphasizes the various sections that promote the fresh-start concept. The use of § 506(d) as a separate avoiding power or an adjunct to the fresh start in the case of non-exempt property is never mentioned. *Larson,* 99 B.R. at 4. *Larson* also ex-

---

**2.** An issue similar to that presented here on which the courts are divided involves the proper interpretation of §§ 506(d) and 1322(b)(2) for chapter 13 debtors. *See In re Hougland,* 886 F.2d 1182 (9th Cir.1989), and cases cited.

plores the possible interplay of § 506(d) to supplement the remedies available to chapter 7 debtors provided by §§ 722 and 522 and finds no support for the use of § 506(d) as a stand-alone avoiding power. *Id. Larson* concludes:

Valuation is a precarious enough undertaking, which should be done only when the code requires it for some legitimate bankruptcy purpose. To subject a creditor to the vagaries and uncertainties of a valuation hearing where the strip down serves no valid chapter 7 purpose and is not an element of an honest debtor's fresh start is unfair to the creditor.

*Id.* (citations omitted).

The debtor in the brief submitted in support of his motion for judgment states that "[t]he Property is not the residence of the Debtor and therefore the Debtor is unable to utilize Section 522(f) to avoid liens." Code § 522(f) authorizes a debtor to avoid a lien "on an interest of the debtor in property to the extent that such lien impairs" a debtor's exemption if the lien is a judicial lien or a nonpossessory, nonpurchase-money security interest in certain described personalty. The debtor's argument means that despite Congress in § 522(f) having granted a debtor lien avoidance powers limited to judicial liens on realty where the debtor can claim an exemption, Congress has, at the same time, granted a debtor much greater avoidance powers in § 506(d), not limited to exempted realty and not limited to judicial liens. I consider such an inconsistent result additional evidence that the debtor's position in this proceeding is not sustainable.

## IV.

### CONCLUSION

Justice Scalia, speaking for a unanimous Supreme Court in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 108 S.Ct. 626, 630, 98 L.Ed.2d 740, 748 (1988), stated that "[s]tatutory construction ... is a holistic endeavor." The main difference, as I see it, dividing the courts on a debtor's unrestricted use of § 506(d), is whether to adopt the holistic or the plain language approach. A decade of experience convinces me that the intricacies of the Bankruptcy Code favor the use of holism, with plain language as applied to separate Code sections in isolation from other sections frequently constituting an oxymoron. Despite the superficial relevance of § 506(d) as a separate avoiding power to benefit a chapter 7 debtor holding title to exempt or abandoned property, I conclude that § 506(d) is not available to the plaintiff-debtor to avoid the liens held by the defendants. *Cf. United States v. Ron Pair Enterprises, Inc.*, —— U.S. ——, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290, 299 (1989) (where "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters ... the intention of the drafters, rather than the strict language, controls." (citations omitted)).

Judgment may enter denying the plaintiff-debtor's motion for judgment, and the complaint will be dismissed.